## DYSON *v.* WARDEN OF THE MARYLAND PENITENTIARY

[App. No. 18, September Term, 1963.]

*Decided January 6, 1964.*

Before the full Court.

BRUNE, C. J., delivered the opinion of the Court.

The applicant, Jerome Dyson, was tried by the Criminal Court of Baltimore, sitting without a jury, and was found guilty on two separate charges of robbery with a deadly weapon and on one charge of attempted robbery with a deadly weapon. The robberies occurred on March 20 and April 6, respectively, in 1960, and the attempted robbery occurred in connection with the robbery committed on the latter date. His convictions were affirmed by this court in *Dyson v. State,* 226 Md. 18, 171 A. 2d 505, and his petition for certiorari was denied by the Supreme Court, 368 U. S. 968. Dyson subsequently filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland in which he alleged as the basis for relief perjury by prosecution witnesses and the knowing use of perjured testimony by the State. The late Judge Chesnut dismissed the petition on February 21, 1962, as premature, because Dyson had not exhausted his available State remedies by seeking relief under the Post Conviction Procedure Act. Judge Chesnut added comments with regard to Dyson's trial and his claims on appeal to this Court, raised by supplemental briefs filed by Dyson *pro se,* in addition to the brief filed by his counsel, that the State had knowingly used perjured testimony. Judge Chesnut quoted this passage from our opinion (226 Md. at 22) : "With reference to the claimed perjured testimony the record discloses merely discrepancies in those witnesses' testimony which was for the consideration of the trial judge, who was required to weigh the evidence." Judge Chesnut continued: "I am not entirely clear as to whether this expressed view of the Court of Appeals should be regarded as a conclusion of the disposition of the point on the merits." He

went on to express the view that if it were, it would be a sufficient reason for denying Dyson's application then before him, but that if it were not conclusive on the merits because of the way in which it was presented and dealt with, then it could be raised at the Post Conviction hearing.

Dyson's application under the Post Conviction Procedure Act followed the above dismissal of his Federal habeas corpus petition as premature. It was denied by Judge Cardin after a hearing at which Dyson was present and was represented by counsel appointed pursuant to the Act. In his combination opinion and order, Judge Cardin filed an order, which also embodied his opinion. In it, he summarized (correctly, we think) the petitioner's allegations as: (1) that he is innocent; (2) that he was inadequately identified by one of the prosecuting witnesses; (3) that another witness perjured himself; (4) that he was not allowed to produce witnesses nor did counsel call witnesses he requested on his behalf; (5) that his attorney was incompetent; (6) that perjured testimony was known to the State prosecutor; and (7) that the State knowingly suppressed material evidence.

As Judge Cardin held, contentions (1) and (2) afford no ground for Post Conviction relief, nor does contention (3) in the absence of any showing of State participation in obtaining or using perjured testimony. The trial judge's finding of fact under contention (6) rejects the applicant's claim of the knowing use by the State of perjured testimony, and we see no occasion to grant leave to appeal as to either contention (3) or contention (6). Contentions (4) and (5) are closely related to each other, and the trial court's finding of fact that the charge of incompetence against the applicant's trial counsel was without merit leads us to deny the application for leave to appeal as to the matters covered by these contentions.

Contention (7) grows out of the examination and cross-examination of a police lieutenant who was called as a witness by the defendant. On direct examination by defense counsel, he testified that the investigation of the case had been under his direction and also testified with regard to matters pertaining to the identification or failure of identification of Dyson at the preliminary hearing. He was then asked:

"Q. Now, did you talk to Mr. Sam Lamartina, 2701 Huntington Avenue and ask him whether he had loaned Dyson any money?

A. The first I knew of Dyson making a loan from him was yesterday morning when you told me here in the courtroom.

Q. Did you talk to Mr. Lamartina?

A. No, I did not.

Q. You did not call him?

A. That's correct, I did not.

Q. Your witness."

His cross-examination by the Assistant State's Attorney consisted of the following:

"Q. Lieutenant, just to clear one thing up. You didn't call him, this Mr. Lamartina. That was on my instruction, was it not?

A. That's correct.

Q. Thank you very much. I have no further questions."

The Post Conviction hearing was continued in order that Mr. Lamartina might be summoned into court. He did appear and, in the words of the trial court, "stated clearly that he had no knowledge concerning the defendant's case." The trial court accordingly held that the alleged suppression of evidence was not material and was in no way prejudicial to the defendant.

In addition to this finding of lack of prejudice, we think there is another reason why the applicant is not entitled to succeed on this issue. This is simply that the facts of the witness' existence and of the loan which the applicant says the witness and his wife made to him at about the time of March 20th offenses (if any such loan was actually made), were known to the applicant at and before the time of his original trial and the applicant, the then defendant, could have summoned both that witness and his wife to testify. The actual request made to the police officer during the course of his testimony as a defense witness, which the Assistant State's Attorney directed him not to comply with, was to *interview* Lamartina. We note that if

the officer had interviewed him, anything that Lamartina told him would have been hearsay. A more fundamental defect in the applicant's contention seems to us to be that a refusal of prosecuting officials to interrogate a witness fully known to the defense about a matter clearly known to the defendant (if his version is true), which might have tended to support the defendant's explanation as to some of the money found on his person or nearby at the time of his arrest, does not constitute the concealment of evidence. This case differs sharply from *Brady v. State,* 226 Md. 422, 174 A. 2d 167, aff'd, *Brady v. Maryland,* 373 U. S. 83, where a confession of a co-defendant admitting that he, the co-defendant, had been the one who actually strangled the victim, was in the possession of the police, but was not disclosed to Brady. This confession we held, was material on the question of Brady's punishment, though not of his guilt. In other words, that confession was material, was known to the police and was not known to Brady. No comparable factors appear to be present here.

On his application for leave to appeal, Dyson seeks to raise two further points, neither of which was raised in the trial court. He asserts that his arrest was unlawful and that the search and seizure incident to his arrest were also unlawful. Neither question is properly before us, and therefore affords no basis for allowing an appeal. Even if they were before us, and even if *Mapp v. Ohio,* 367 U. S. 643, upon which they are based, should be held retroactive so as to be applicable to Dyson's cases (as to which we now express no opinion), they appear to be without merit in the light of the evidence with regard to his arrest and the search and seizure which was summarized in our opinion on his direct appeal (226 Md. at 20), and which, we think, shows that they were lawful.

For completeness and to resolve the doubt which Judge Chesnut expressed, and as an additional ground for rejecting the applicant's claim of perjury by a prosecution witness, we may add that our comments on the original appeal on Dyson's claims of perjury by prosecution witnesses were made after we had carefully considered his claims and were intended by us as a square rejection thereof. Such claims have therefore been pre-

viously and finally adjudicated insofar as review by this Court is concerned.

*Application denied.*