## HYDE v. WARDEN OF MARYLAND PENITENTIARY

[App. No. 82, September Term, 1963.]

*Decided July 1, 1964.*

Before the entire Court.

BRUNE, C. J., delivered the opinion of the Court.

The applicant, John N. Hyde, was convicted of murder in the first degree in May, 1961, and was sentenced to life imprisonment. His conviction was affirmed in *Hyde v. State,* 228 Md. 209, 179 A. 2d 421, (1962) cert. denied, 372 U. S. 945 (1963). This application for post conviction relief was heard by Judge Berry in the Circuit Court for Baltimore County and was denied by him with the statement that none of the contentions raised came "within the purview of post conviction procedure." The applicant was present at the hearing and took the stand, but in view of the court's ruling no testimony as to the facts alleged in his application or supplemental application was taken.

The grounds alleged as bases for relief were: (1) illegal arrest; (2) use of illegally seized evidence; (3) use of improper means to obtain confession; (4) suppression of certain physical evidence taken from the applicant; (5) failure to give a lie detector test, which he was willing to take; (6) false testimony by a witness for the State; (7) an unfair police line-up; and (8) incompetence of trial counsel.

With his petition the applicant submitted extracts from the record of his trial and we have taken judicial notice of the record extract or appendix to his brief on the original appeal.

Judge Berry's view was that contentions (1) and (2) had

been waived because objections based thereon could have been but were not raised at the trial or on appeal. Since his case was tried about a month before the decision of *Mapp v. Ohio*, 367 U. S. 643, and the case was heard and decided on appeal to this Court before the decision of the United States Court of Appeals for the Fourth Circuit in *Hall v. Warden*, 313 F. 2d 483, the consideration thereof on post conviction was not necessarily precluded by waiver. However, on the record in Hyde's appeal we think that the arrest was lawful as made by police officers after having knowledge that a felony had been committed and with reasonable grounds to believe that Hyde had committed it. This, we think, is sufficiently shown by evidence that the police had seen the body of the murdered woman, who had been stabbed to death, had interviewed witnesses who testified at the trial that they had seen the applicant at or leaving the home of the deceased on the morning of the murder close to the time of the discovery of the murder (which was very shortly after its commission), that they had a description of the wanted man, and that they then went to the home of the applicant. In addition, there was testimony which was uncontradicted that he met them at the door, that he was then wearing a bathrobe and slippers, that he told them he was washing clothes, that he invited the officers in and readily agreed to their looking at the clothes which were in the basement where the washing machine was located. He was actually told that he was under arrest when they were in the basement and after Hyde had admitted having "been down the street," though at first he claimed that no one was at home. "Down the street" may have meant only "out of the house", and not the home of the deceased, which was only a few doors away from Hyde's residence. (Before Hyde was taken to the police station he admitted having been in the deceased's house that morning. The testimony of one officer indicates that this statement was made before Hyde's actual arrest, but that of the officer in charge places the time of arrest as we have stated it above.)

The testimony shows that the start of the search at least was consented to, and we think that it was in any event valid, both as to articles found in the basement and others later in the ap-

plicant's room as being incidental to and substantially contemporaneous with a lawful arrest, whether made before or after, or partly before and partly after, the actual arrest. See *Cannon v. State*, 235 Md. 133, 200 A. 2d 919. The evidence seized during the search was accordingly admissible.

With regard to contention (4), the alleged suppression of evidence by the State in not offering in evidence certain articles taken from the applicant at the time of his arrest and of the search (of which he complains in contentions (1) and (2)), the record on appeal makes it clear that the applicant knew about these articles, which consisted of clothing which he had been washing just before his arrest. No blood stains were found on them when tested, which was, of course, after they had been washed. Such evidence does not seem material. In any event, in view of Hyde's knowledge of these articles, this contention is not supportable. *Dyson v. Warden*, 233 Md. 630, 196 A. 2d 455.

Contention (5)—failure to give a lie-detector test which the applicant says he was willing to take—involves no violation of any constitutional right of which we are aware.

Contentions (6) and (7) are without merit in our view on the basis of the record on Hyde's appeal, even if we assume that either or both of them is available in this proceeding. Contention (6) is that one witness committed perjury. There is no charge of the State's knowing use of perjury, and hence no ground for post conviction relief is present. Even if it were, the charge of perjury is not well founded. It proceeds largely upon the appellant's reading of a part of her testimony as stating that she saw two men. The passage in question reads as follows: "I seen this man coming down the step and then the other one and I thought, gee, that's funny and he had a khaki jacket on and light khaki pants." The applicant claims that there is an inference that there were two men coming away from the house. We think that "coming down the step and then the other one" refers to one step and a second step, not a second man. A reading of her whole testimony confirms this, since elsewhere she clearly speaks of only one man and never of a second. This witness' identification of the applicant at a police line-up was

weakened on cross-examination, but not destroyed and the applicant's attack goes only to a question of credibility which was for determination by the trier of facts, and was determined by him. In considering the matter, the trial judge observed with regard to testimony of this witness (Mrs. Thatcher) : "her hesitancy in the identification is of no signficance in view of the fact that she saw whoever it was leaving the house speaking to Mrs. Kirkpatrick and Mrs. Kirkpatrick testified clearly that the person she spoke to outside the house was the defendant."

Contention (7) as to allegedly unfair conduct of a police lineup is barred as a matter which the applicant could have raised at his trial or on appeal, but which he did not press. *Dorris v. Warden,* 222 Md. 586, 158 A. 2d 105. In any event the allegations appear too insubstantial to warrant relief—"that it took two observations by alleged witnesses to select your Petitioner from among a group of strangers, none of whom, except your Petitioner, was known to the alleged witnesses." See *Proctor v. State,* 223 Md. 394, 400-01, 164 A. 2d 708; *Presley v. State,* 224 Md. 550, 168 A. 2d 510, cert. den. 368 U. S. 957; *Sippio v. State,* 227 Md. 449, 177 A. 2d 261.

Contention (8) is that the applicant's trial counsel was incompetent. Judge Berry held that this afforded no ground for post conviction relief, relying on *Scott v. Warden,* 222 Md. 596, 158 A. 2d 761. That case and *Young v. Warden,* 218 Md. 636, 639, 145 A. 2d 238, cited in *Scott,* indicate that the incompetence of counsel is available on post conviction only if there is an allegation of fraud or collusion or if objection or complaint has been made in the trial court. These limitations are no longer recognized. See *Myers v. Director* (a post conviction case), 233 Md. 621, 195 A. 2d 716, in which the case was remanded for the determination of two claims, one of which was the alleged incompetence of counsel. See also the following recent post conviction cases in which questions of the competence of counsel have been considered without any mention of the restrictions stated in *Scott* and *Young*: *Wampler v. Warden,* 231 Md. 639, 649, 191 A. 2d 594; *Drehoff v. Warden,* 231 Md. 654, 656, 191 A. 2d 421; *Kohne v. Warden,* 232 Md. 633, 192 A. 2d 761; *Slater v. Warden,* 233 Md. 609, 611, 195 A. 2d 675; *Buch-*

*oltz v. Warden,* 233 Md. 614, 195 A. 2d 690; *Dyson v. Warden,* 233 Md. 630, 196 A. 2d 455.

Judge Berry made no actual finding of fact on contention (8), but in considering it he did say: "If he [William L. K. Barrett (since deceased)] and Mr. Nolan together represented this man, this Court would believe and take judicial notice of the fact that he was represented by competent counsel because of his personal knowledge particularly of Mr. Barrett's superior qualifications and long experience."

The allegations of incompetence of trial counsel are that they failed: (a) to summon jail guards to testify to the applicant's nosebleeds while in prison; (b) to object to certain testimony alleged to be prejudicial; (c) to make all necessary motions; (d) to file a motion for discovery before trial; (e) to request sequestration of witnesses; (f) to cross-examine one witness; and (g) to follow the applicant's instructions as to a plea of insanity.

Item (c) is too vague to have any readily ascertainable meaning. If it is intended to refer to failure to move to suppress evidence seized at the applicant's home, it is sufficient to note first that the case was tried before the decision of *Mapp v. Ohio,* 367 U. S. 643, and second, that even under that decision we should regard such evidence as admissible for the reasons we have stated above.

An examination of the record on appeal shows the other objections to the competence of counsel to be without substance. The testimony of jail guards (item (a)) as to the applicant's nosebleeds after his arrest could not have impaired the evidence showing his presence at the home of the deceased when she was stabbed to death and his own admissions on the stand with regard thereto. His main defenses were insanity and lack of premeditation. Item (b) relates to testimony of an F.B.I. agent to the effect that the blood stains on the applicant's clothing could not be identified as coming from the decedent. This testimony could not well have been harmful to the applicant. As to item (d)—pre-trial discovery—the record shows that the applicant's counsel had had full access to documents in the prosecutor's file. One letter or copy of a letter from the applicant

which had been in the possession of the police and not of the State's Attorney and which was not seen by the latter until the day of the trial was duly and promptly objected to by his counsel and was not admitted into evidence, though some cross-examination based upon its contents was permitted.

Item (e) relating to sequestration of witnesses lacks any specifics. It seems to rest upon an alleged conflict between the testimony of one neighbor witness and that of another. The underlying fallacy of this contention is the applicant's misinterpretation of the testimony of this witness (Mrs. Thatcher) upon which he based his charge of perjury in his contention (6) which we have considered above. Item (f) relates to alleged failure to cross-examine this witness as to whether she saw one or two men leaving the deceased's house. We think that her testimony quite plainly indicates that she spoke of seeing only one man. Cross-examination might have made this still clearer, but we do not see how that could have aided the applicant.

Item (g)—that counsel disregarded the applicant's instructions in interposing a plea of insanity on his behalf—does not show incompetence. Not only did it have no prejudicial effect (contrast *Lynch v. Overholser,* 369 U. S. 705), but a reading of the comments of the trial judge in imposing sentence shows that evidence of the applicant's mental illness, though he was found legally sane under the law of this State, was the principal factor leading to the imposition of a sentence of life imprisonment rather than the death penalty. Under Code (1957), Art. 27, sec. 413, these are the only permissible penalties for murder in the first degree, and that was the offense of which he was found guilty.

This leaves for consideration only contention (3) — that Hyde's oral statements and written confession were improperly obtained and should not have been admitted. The admissibility of the confession was attacked on substantially the same grounds on his appeal as are relied upon in the present application—lack of counsel and failure to advise of his right not to answer questions. These contentions were rejected, mainly in reliance upon *Crooker v. California,* 357 U. S. 433, and reference ("Cf.") was also made to *Culombe v. Connecticut,* 367 U. S. 568.

The applicant's present contentions relating to lack of counsel and failure of the police to inform him of his right to keep silent were stated to be based upon decisions of the Supreme Court of the United States rendered after the applicant's conviction had been affirmed. Judge Berry stated that he had read them, but they are not identified by him, or otherwise. We assume that *White v. Maryland,* 373 U. S. 59, and *Haynes v. Washington,* 373 U. S. 503, were among them, and possibly *Fay v. Noia,* 372 U. S. 391, was another. Judge Berry expressed the view that the cases he had read [whichever they were] were not retroactive. During the pendency of this application in this Court the Supreme Court has decided two other cases involving the right to counsel, *Massiah v. United States,* 377 U. S. 201, and *Escobedo v. Illinois,* 378 U. S. 478. We do not find the question of the retroactivity of any of these cases so simple as it appears to have been to Judge Berry. (A comparable problem as to the retroactivity of *Mapp v. Ohio,* 367 U. S. 643, is involved, we understand, in *Linkletter v. Walker,* in which certiorari has been granted by the Supreme Court, 84 S. Ct. 1340. *Griffin v. Illinois,* 351 U. S. 12, was held retroactive in *Eskridge v. Washington Prison Bd.,* 357 U. S. 214.)

Three important questions are raised by this application. The first is this: can the admissibility of Hyde's statements and confession be considered as a ground for relief under the Maryland Post Conviction Procedure Act by reason of decisions of the Supreme Court of the United States rendered after its admissibility had been upheld by this Court and the conviction affirmed on the basis of the law as we then understood it to be? If the answer to the first question is "yes," the second question is: do any supervening decisions of the Supreme Court of the United States indicate that admission of the statements and confession made by the applicant was in contravention of his constitutional rights?

This in turn raises a third question: are these supervening decisions retroactive?

An examination of the record on the first appeal shows that the trial judge decided the question of the admissibility of the oral statements and written confession on the test of voluntari-

ness, and he made no specific finding as to whether Hyde requested the assistance of counsel and his request was refused or whether he merely expressed a desire to consult counsel and his desire was ignored or whether he expressed a desire to consult counsel and was informed that he could do so when and only when he had written a confession. We do not undertake at this time to determine whether the differences between these situations, any of which may be claimed to be supported by evidence, would be significant in the determination of the second question stated above, but a finding of fact with regard thereto would clarify the issue under that question, if under the answer to the first question, the second question is reached. The record on the original appeal indicates that the police did not advise the applicant of his right to remain silent, and there does not appear to be any need for a further determination of the facts with regard thereto.

We think that the first of the above questions should be determined, and if it is answered in the affirmative, the others should also be determined by this Court. We think that all of these questions are before this Court on the record as it stands (including the record on the original appeal), but that it would be advantageous and in the interest of bringing the case to a final conclusion as soon as practicable to have a finding as to the factual questions above outlined and then, with that finding, to proceed to a determination of the first question and, if it is answered in the affirmative, to a decision of the second question and, if necessary, the third.

Accordingly, we shall remand the case to the Circuit Court for Baltimore County for a determination of the facts with regard to the applicant's desire or request or requests for counsel and police action or inaction with regard thereto, such determination to be reported to this Court as soon as practicable, together with a transcript of any testimony which may be taken thereon and a copy of any stipulation which may be entered into with regard to testimony offered at the original trial. Leave to appeal with respect to the three questions above stated is granted, and the case is to be transferred to the regular appellate docket as soon as the finding, together with any transcript or stipulation, or both, shall be filed; and the case shall

be set for hearing at the earliest practicable session of this Court after the filing of briefs.

> *Case remanded for findings of fact and the return thereof and of any testimony and stipulation in accordance with the above opinion, and leave to appeal granted as to the three questions stated in said opinion; and leave to appeal as to other matters set forth in the above opinion denied; the proceedings on appeal to be in accordance with the above opinion.*