SMITH, Chief Judge.
After hearing, the trial court entered an order denying the appellant’s post-conviction motion seeking relief from a judgment and sentence of life imprisonment imposed in 1941. The appellant contends that the trial court erred in refusing to find that his plea of guilty, entered through counsel appointed to defend him against a first degree murder charge, was induced by a confession obtained in violation of his constitutional rights. We find no error and affirm without deciding (1) whether or not the confession was in fact so obtained, or (2) whether or not relief is available from a conviction based upon or induced by such a confession through post-conviction pro *98 ceedings, since there is no evidence that the confession induced the guilty plea.
By indictment filed October 2, 1940, the appellant was charged with the premeditated murder of one Ross Arnold on August 17, 1940. The appellant was arrested in Tennessee and returned to Hillsborough County in January 1941. On February 1, 1941, the appellant was questioned by an assistant state attorney in the presence of two deputy sheriffs and a court reporter. The original transcript of this interrogation was produced by an assistant state attorney at the hearing on the appellant’s Criminal Procedure Rule No. 1 motion. The transcript indicates that the appellant was first advised, among other things, that he need not answer any questions that would incriminate him because his answers could be used against him in court. It contains acknowledgments by the appellant that he understood this advice, that the statement was given voluntarily of his own free will, and that he had been fairly treated by the assistant state attorney and the deputy sheriffs.
The interrogation proper contains statements by the appellant that he “cut” Arnold while sitting in Arnold’s car drinking. It states that the appellant got out, walked around to Arnold’s side, struggled across a ditch, “cut” him again, fell with him and took $6 from his pockets. The transcript discloses that the appellant drove off in Arnold’s car, picked up a friend of his, Ed Barrios, asked Barrios "what to do about it” and discussed blood stains on the car with his brother, Francis.[1] The interrogation further discloses that Ed Barrios tried to sober the appellant up and take him home “to confess everything;” that after he got home “they were telling [him] all the things [he] did, and they found out and they were telling [him] what [he] had done;”[2] and that “they said there was a mob after [him], and [he] took [his] wife and left. * * * ” Referring to a shirt which the assistant state attorney had shown him that after noon, the appellant stated that it had blood on it, that he had become frightened and that he had taken it off and thrown it out of the car.[3] Finally, in answering questions which indicate that Ed Barrios already had discussed the matter with the state attorney’s office,[4] the appellant confirmed the fact that he had stopped Arnold's car near the site of the crime and had said to Ed: “Come over here, do you want to see something awful;” also, that, as they drove further down the road, he had said to Ed: “Ed, how long does it take for a dead body before it starts smelling?”
On February 4th, three days after the interrogation, the appellant was brought to court, adjudged insolvent, counsel was appointed to represent him, and a plea of not guilty was entered. The next day the appellant appeared in court with appointed counsel, an experienced attorney, who moved that the appellant be allowed to withdraw his plea of not guilty, plead guilty to murder in the first degree and ask for the mercy of the court. The court granted this motion upon the recommendation of the state attorney. Thereupon, witnesses were sworn and the court proceeded to hear evidence. The hearing commenced at 2:20 P.M. and terminated at 3:10 P.M. after the court had sentenced the appellant to life imprisonment.
At the hearing on the appellant’s Criminal Procedure Rule No. 1 motion the tran *99 script produced by the state attorney’s office was introduced in evidence by the appellant. He then testified, contrary to this transcript, that prior to and during the course of the questioning he had repeatedly requested an attorney. In the order appealed the court denied the appellant’s motion on the ground, among others, that the purported confession had never been used against him.
The appellant relies chiefly upon Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, a recent five-four decision by the Supreme Court of the United States. The majority there held that the Sixth and Fourteenth Amendments were violated by the introduction in evidence in a state criminal proceeding of an incriminating statement elicited under certain described circumstances, including, among others, a refusal by the police to honor the defendant’s request to consult with his lawyer during the course of the interrogation which produced the statement. A casual reading of the Court’s majority opinion discloses that it is based upon numerous circumstances many of which are not present here. However, since our decision turns upon another point, we may assume, without deciding, that the interrogation in the present case was conducted in such a manner as to have rendered it inadmissible under the Escobedo case.[5]
The appellant does not contend that the confession was actually used against him. He contends that its mere existence rendered meaningless the subsequent appointment of counsel and virtually obviated the possibility of a trial on the issue of guilt.[6] In the absence of evidence we *100 will not infer that a defendant who pleads guilty while represented by appointed counsel necessarily was induced to do so by a prior Escobedo-type interrogation. In re Seiterle, 1964, 39 Cal.Rptr. 716, 394 P.2d 556; Hornes v. Warden, Maryland House of Correction, 1964, 235 Md. 673, 202 A.2d 643.[7] The facts of the present case demonstrate the fallacy of such a presumption. The evidence available to the prosecutor in this case, apart from the interrogation, was sufficient of itself to cause the appellant and his appointed counsel reasonable apprehension concerning the possible imposition of the death penalty. Under these circumstances the reasonable inference is that such evidence induced both the confession and the plea. The sentence which the appellant is now serving was not based upon the confession of which he complains but upon his plea of guilty voluntarily made.[8]
The court expresses its thanks to counsel appointed to represent the appellant on this appeal for their effective presentation of the appellant’s case.
Affirmed.
ALLEN and ANDREWS, JJ., concur.

. Appellant stated that when Ms brother asked Mm where he got the car he advised him he had “hit bolita and borrowed $150 from the Government. * * * ”

. Appellant stated that his father told him “Lord have mercy, what have you done, son?”

.Tbe appellant stated that, before be picked up Ed Barrios, be bought a shirt from a boy at a “station on No. 17 Highway,” that be drove to tbe “Blue Moon” dance ball and later got some gas at a filling station across tbe street from tbe dance ball.

. Ed Barrios was one of five witnesses listed on tbe murder indictment.

. Another question which we expressly do not decide is whether or not the Esco-bedo case operates retroactively in such a manner as to invalidate prior convictions, thereby rendering them subject to collateral attack by motion under Criminal Procedure Rule No. 1, E.S.A. ch. 924 Appendix. This question is somewhat more difficult than it first seems. Hyde v. Warden of Maryland Penitentiary, 1964, 235 Md. 641, 202 A.2d 382, 386-388; Note and Comment, 43 N.C. Law Rev. 187, 195-197. The decisions in other jurisdictions understandably are in conflict. A New York court held Es-cobedo inapplicable to a case which had been adjudicated with finality before Es-cobedo was decided. People v. Hovnanian, 1964, 22 A.D.2d 686, 253 N.Y.S.2d 241 (denying motion for reargument of appeal). In a habeas corpus proceeding a federal trial court vacated a 1957 Puerto Rican sentence upon the authority of Escobedo without expressly considering the problem of retroactive application. Galarza Cruz v. Delgado, U.S.D.C.D.Puerto Rico, 1964, 233 E.Supp. 944. In the first post-conviction proceeding before it involving Escobedo the New Jersey Supreme Court found it unnecessary to determine whether Escobedo must be applied retroactively. State v. Smith, 1964, 43 N.J. 67, 202 A.2d 669. Pending a final decision upon the further appeal which was allowed in the Hyde case, supra, the Court of Appeals of Maryland in a subsequent case assumed, without deciding, [that Escobedo operated retrospectively. Parker v. Warden of Maryland Penitentiary, 1964, 236 Md. 236, 203 A.2d 418. In reversing an order denying a state prisoner’s habeas corpus petition without hearing a federal court held that it was error not to apply Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, to a case which was within the appellate court processes when Mapp was decided. United States ex rel. West v. LaVallee, 2 Cir. 1964, 335 F.2d 230. The court also indicated that the Escobedo case, decided after the final state court appeal, also might be relevant upon remand. See also note 6, infra.

. A similar argument was urged in. Wright v. Dickson, 9 Cir. 1964, 336 F.2d 878 (Hamlin, J., dissenting) where a majority of the court reversed an order dismissing without evidentiary hearing a federal habeas corpus attack on a 1954 state sentence based on a guilty plea. The appellant there had pleaded guilty and been sentenced without counsel and his petition alleged that he had not effectively waived his right to counsel. The court stated that the appellant’s guilty plea could not stand if it had in fact been induced by an Escobedo-type interrogation. Here again the court assumed Escobedo was applicable without discussing the problem. See note 5, supra.

. In Seiterle, a murder case, tlie court said:
“We need not consider whether the confession was improperly obtained under tlie rules announced in recent decisions of the United States Supreme Court which deal with the right to counsel before trial. (Massiah v. U. S., [1964] 84 S.Ct. 1199, 12 L.Ed.2d 246; Escobedo v. Illinois [1964] 84 S.Ct. 1758, 12 L.Ed.2d 977.) Assuming that Soiterle’s confession was obtained in violation of those rules, it was not used to convict him; his conviction was based on his plea of guilty. Although he now asserts that the existence of the confession caused him to plead guilty, his initial plea, closest in time to the confession, was one of not guilty and not guilty by reason of insanity, and his testimony at the reference hearing did not point to tlie confession as the motivation for the change of plea but was to the effect, now established to be false, that the motivation was misconduct Mr. Wilson.” 39 Cal.Rptr. 720, 394 P.2d 560.
In Hornes tlie court refused leave to appeal a denial of post-conviction relief where there was no evidence that a guilty plea had been so induced. See also McQueen v. Maxwell, 1964, 177 Ohio St. 30, 201 N.E.2d 701.

. Suarez v. United States, 5 Cir. 1964, 333 F.2d 366; Starks v. United States, 4 Cir. 1959, 264 F.2d 797; Cuff v. United States, 5 Cir. 1962, 311 F.2d 185; United States v. Langston, U.S.D.C.W.D.Pa. 1961, 194 F.Supp. 891. See also Cauley v. United States, 9 Cir. 1961, 294 F.2d 318; Carnes v. United States, 10 Cir. 1960, 279 F.2d 378, cert. denied, 1960, 364 U.S. 846, 81 S.Ct. 88, 5 L.Ed.2d 69; Johnson v. United States, 9 Cir. 1959, 267 F.2d 813, cert. denied, 1961, 366 U.S. 931, 81 S.Ct. 1654, 6 L.Ed.2d 390.