184 N.J. Super. 551 (1982)
446 A.2d 1224
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM TOMARAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 20, 1982.
Decided May 14, 1982.
*552 Before Judges BOTTER, ANTELL and FURMAN.
G. Robert Wills argued the cause for appellant (Strauss, Wills, O'Neill & Voorhees, attorneys; G. Robert Wills on the brief).
Katherine A. Smith, Deputy Attorney General, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey; James R. Zazzali, former Attorney General, and Katherine A. Smith on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
Defendant was convicted in a jury trial of the murder of Robert Cooper and of other charges contained in the same indictment, namely, armed robbery, assault with intent to kill and acquiring a firearm while under 18 years of age. Defendant was sentenced to a life term for the murder, with a concurrent term of one to three years on the firearm conviction. The convictions for robbery, armed robbery and assault with intent to kill were vacated as having merged with the conviction *553 for murder under the first count of the indictment. See State v. Nichols, 71 N.J. 358, 360-361 (1976). This appeal followed.
Defendant was originally charged in December 1975 with juvenile delinquency based upon the killing of Robert Cooper. Following a hearing, jurisdiction of the Juvenile and Domestic Relations Court was waived so that defendant could be prosecuted as an adult. N.J.S.A. 2A:4-48; R. 5:9-5(b). An appeal was taken from the order waiving jurisdiction and this court affirmed that determination. Thereafter, our Supreme Court denied defendant's petition for certification. State in the Interest of B.T., 145 N.J. Super. 268 (App.Div. 1976), certif. den. 73 N.J. 49 (1977).[1]
Defendant's first contention on this appeal is, "The Appellate Division erred in upholding the waiver of jurisdiction over the juvenile defendant." The brief filed for defendant argues that the previous decision of this court in State in the Interest of B.T., supra, was based on an erroneous analogy between a probable cause hearing and a grand jury hearing. The brief also contends that there was "insufficient legally competent evidence to sustain a finding of probable cause at the jurisdictional waiver hearing held in the juvenile court," and that "[t]he denial of a meaningful opportunity to cross-examine constituted a denial of due process."
We refused to entertain oral argument seeking to demonstrate that the waiver of jurisdiction was incorrectly upheld on the previous appeal. What was decided in that appeal became the law of the case and could not be relitigated here even if the issue is of constitutional dimension. State v. Smith, 43 N.J. 67, 74 (1964), cert. den. 379 U.S. 1005, 85 S.Ct. 731, 13 L.Ed.2d 706 (1965); State v. Cusick, 116 N.J. Super. 482, 485 (App.Div. 1971); *554 see United States v. U.S. Smelting, Refining & Mining Co., 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). The correctness of the jurisdictional order cannot be relitigated on this appeal.
The remaining contention advanced on defendant's behalf is that the trial judge committed reversible error in admitting proof that defendant escaped from the Bergen County Jail Annex while awaiting trial on the indictment. Testifying in his own defense defendant explained that he escaped because he had been "kept there for over a period of two years with every trial date being postponed, and ... was locked up in a small cell and beaten up." Defendant argues that his escape from jail was more likely caused by his experience there as a youth (he was 17 years old when arrested in December 1975) than by consciousness of guilt. United States v. Myers, 550 F.2d 1036 (5 Cir.1977), cert. den. 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), is cited (at 1051) for the proposition that "[t]he more remote in time the alleged flight is from the commission or accusation of an offense, the greater the likelihood that it resulted from something other than feelings of guilt concerning that offense."
It has been said that proof of flight from justice and its analogous conduct, such as escape, resistance and concealment "have always been deemed indicative of a consciousness of guilt." II Wigmore, Evidence (3 ed. 1940), § 276 at 111. Wigmore goes on to say:
It is to-day universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.... [Id.]
This principle was accepted in State v. Young, 97 N.J.L. 501, 504 (E. & A. 1922), where the court held that defendant's attempt to obtain implements that he could use to escape from jail were competent evidence whose "weight on the question of conscious guilt ... was for the jury." The court opined that an attempt to escape from prison "would perhaps be more persuasive of conscious guilt than flight before arrest," holding that "either *555 act is competent on the question of guilt." Id. Note that in State v. Wilson, 57 N.J. 39, 48-49 (1970), defendant contended that the doctrine of flight applies only when defendant flees from custody or is found hiding after a crime, but the court rejected this contention where the jury could find that defendant left the scene of a crime to avoid arrest.
Judge Madden noted in his opinion below that the logical connection between flight, consciousness of guilt and guilt of an offense has been questioned, citing authorities including Wong Sun v. United States, 371 U.S. 471, 483, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 452, n. 10 (1963). Writing in Wong Sun, Justice Brennan cited Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051, 1056 (1896), for the observation that innocent persons sometimes flee from the scene of a crime "through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." Nevertheless, the court in Alberty held that although there may be many reasons consistent with innocence to flee, evidence of flight has been allowed on the theory that a jury will give it such weight as it deserves according to surrounding circumstances. It is worth noting, however, that the trial judge whose charge to the jury on flight was under attack in Alberty had stated that the innocent will confront a jury and seeks its protection, believing that the more evidence presented in the case the more they are likely to be acquitted of a false charge. Similar reasoning was expressed in People v. Terry, 2 Cal.3d 362, 395, 85 Cal. Rptr. 409, 466 P.2d 961, 982 (Sup.Ct. 1970), cert. dism. 406 U.S. 912, 92 S.Ct. 1619, 32 L.Ed.2d 112 (1972), where the court said:
Terry contends it is likely that one who has been incarcerated several months escapes because he cannot bear further incarceration. This is possible, but it is also probable that only one who expects his guilt to be proved at trial will attempt an escape and that an innocent man will stay for trial in order to clear his name and win lawful liberty. In any event, the question of time of escape goes to the weight to be given evidence of escape pending trial, not to its admissibility. [85 Cal. Rptr. at 430 [466 P.2d 982]]
While innocent men may flee from a false accusation, finding it painful and frightening to face the charges, it is a matter of *556 common knowledge that persons who have committed crimes often do flee from the scene and, frequently faced by overwhelming evidence against them, flee from custody before or during trial. The admissibility of this evidence, with its weight to be gauged by the jury, is too well established for us to conclude that the trial judge erred in admitting the evidence in this case.
Accordingly, the conviction is affirmed.
NOTES
[1] This opinion contains a description of how the crimes were committed. One of defendant's friends who was present testified at the trial that defendant shot Cooper without provocation. There was ample corroboration of defendant's guilt.