HARRINGTON *v.* WARDEN OF THE MARYLAND HOUSE OF CORRECTION

[App. No. 37, September Term, 1962.]

622

*Decided July 15, 1963.*

Before Brune, C. J., and Henderson, Hammond, Prescott, Horney, Marbury and Sybert, JJ.

Brune, C. J., delivered the opinion of the Court.

This is the second time that this Post Conviction Procedure Act case has come before this Court on an application for leave to appeal. On the previous application we remanded the case for the filing of a memorandum by the trial court pursuant to Maryland Rule BK 45 (b) and for the return of the application and record, including such memorandum, for further consideration. *Harrington v. Warden,* 230 Md. 639, 187 A. 2d 862. On the return of the record to this Court there have been included (1) a copy of the oral opinion of the trial court delivered at the conclusion of the post-conviction hearing; (2) the transcript of proceedings at the hearing under the Post Conviction Procedure Act; and (3) the transcript of proceedings at the applicant's trial which resulted in his conviction. The last was also before the trial court at the post-conviction hearing and a copy had previously been furnished to the applicant at public expense.

As noted on the prior application, the basis of Harrington's amended petition for post-conviction relief was the alleged obtention and use by the State of perjured testimony, with knowledge that it was perjured. At the post-conviction hearing each of the witnesses who was alleged to have testified falsely against the applicant was present and testified. The Assistant State's Attorney who prosecuted the applicant also appeared and testified, as did one other witness who was called by the applicant. The applicant himself was present at the hearing, but did not testify, although at times he participated actively in the proceedings. The heart of the trial court's brief oral opinion is contained in the following paragraph:

"Now, we have had a very complete and full hearing * * *. Considerable testimony has been taken. But the Court doesn't feel that it has elicited one iota of testimony which would in any way substantiate the charge that the petitioner here makes that the [Assistant] State's Attorney, * * * who was also heard, in any way had any knowledge of any false testimony, nor is there any indication to the Court that any of the testimony given at the trial on January 13, 1961, was in any way false. There has been no change in the testimony given by the witnesses at the trial as to that given by them today. We feel that * * * there is just nothing in any way to substantiate this charge."

An examination of the transcripts both of the applicant's trial and of his post-conviction hearing fully supports the trial court's finding that the Assistant State's Attorney had no knowledge whatever of any false testimony adduced against the applicant at his trial. There is thus no basis in this case for post-conviction relief based upon the alleged use by the State of perjured testimony. *State v. D'Onofrio,* 221 Md. 20, 155 A. 2d 643; *Wilson v. Warden,* 222 Md. 580, 158 A. 2d 103; *Whitley v. Warden,* 222 Md. 608, 158 A. 2d 905; *Washington v. Warden,* 225 Md. 623, 169 A. 2d 419; *Fisher v. Warden,* 225 Md. 642, 171 A. 2d 731.

With regard to four of the five witnesses who testified at the post-conviction hearing, we also think that the transcripts fully warrant the conclusions of the trial court that there is no indication that any of their testimony given at the original trial was false. Though we do not agree that there is no such indication as to the testimony of the other witness, Stroy, we cannot say that his testimony is actually shown to be false in any respect. However, at least some suspicion is aroused by his declining to answer, on grounds of possible self-incrimination on a charge of perjury, whether everything he had testified to at the trial was true. We think from an examination of the transcripts, that the specific matter which prompted his declining to answer was whether or not he had received any of

the proceeds of the hold up and robbery of a drugstore for which the applicant, Harrington, was tried and convicted. Whether Stroy did or did not receive any of the money had no direct bearing on Harrington's guilt. In any event, even if Stroy's original testimony at the trial was in fact untrue as to this matter, its falsity was not known to the prosecuting attorney, as we have already noted. We may add that Stroy's testimony as to a number of other matters was corroborated by other witnesses, and in some relevant details was corroborated by the applicant himself. There is a good deal of testimony to show that Stroy, Harrington and two others, Smallwood and Parker, had conspired (in Washington, D. C.) to hold up the drugstore in question. Smallwood and Parker, who had been convicted before Harrington's trial, both admitted their part in it when called to testify at Harrington's trial. They placed him at the scene, but not as entering the store with them. There was, however, testimony from two of the victims who were held up that a third man, whom they could not see well enough to identify, had handed bags to Smallwood and Parker during the hold up, in which the money stolen from the safe was placed. Stroy apparently lost his nerve and did not show up at the drugstore until after the robbery had been committed. Harrington's defense was that he, too, backed out of the enterprise just before Smallwood and Parker entered the store. The jury evidently did not believe him. He left the scene of the crime with them and there was evidence that he and Smallwood and Parker divided the stolen money.

The applicant contends that inducements were held out to Smallwood and Parker, both of whom had already been convicted of the robbery for which he was on trial, to testify falsely against him. There is no evidence at all to support his claim that any effort was made to induce either of them to testify falsely. The conversations between these witnesses and the Assistant State's Attorney held just before the trial were fully developed at the trial, and the testimony with regard thereto at the post-conviction hearing was to just the same effect as at the trial. In brief, it was that they were brought from the Penitentiary to testify at the trial, that the Assistant State's Attorney conferred with them briefly and asked them to testify,

but told them that they did not have to do so, and that he also told them that it might help them to obtain paroles later if they did testify. There is no evidence whatever to show that the Assistant State's Attorney sought to falsify their testimony. On the contrary, the evidence shows that he asked them to tell the truth. One of them seemed a little reluctant to testify because of fear of reprisals by Harrington.

The applicant contends on appeal that his counsel at the post-conviction hearing was incompetent. We do not think that the record bears him out. In spite of numerous and, in our estimation, harassing and non-meritorious objections by the Deputy State's Attorney based upon questions being leading (many of which objections were sustained), the applicant's counsel persevered in seeking answers to questions designed to support the applicant's contentions and generally succeeded in getting answers. Unfortunately for the applicant, they did not support his contentions. Stroy's refusal to answer one question on the ground of possible self-incrimination has already been discussed at length. We think he was within his rights in standing upon this ground. Smallwood's and Parker's testimony was in full accord with their testimony at the trial. Parker, when asked much the same question as that which Stroy declined to answer, affirmed the truth of his testimony at the trial, and upon being informed of his right to decline to answer if his answer might expose him to a charge of perjury, he adhered to his answer.

Smallwood, Parker and the prosecuting attorney all denied that there had been any conversation between the Assistant State's Attorney and either of those witnesses with regard to their testifying against Harrington, other than the conversations above referred to which took place on the day of the trial. The applicant complains of failure of his counsel to obtain and put in evidence the Penitentiary's record of visitors to Smallwood and Parker between the time of their conviction and the time of the applicant's trial. The record in this case indicates that the applicant's counsel sought that record two weeks before the post-conviction hearing. Whether it was furnished or not and what it showed do not appear from the record as trans-

mitted to us. It is clear, however, that it was not overlooked by the applicant's counsel. Because of this new ground of attack now presented we have requested data on this subject. We are advised that the records of the Penitentiary which are now in the possession of the Maryland Institution for Men, to which Smallwood and Parker and their prison records have been transferred, show no visitors to either of them during their incarceration at the Penitentiary by any persons other than persons describing themselves as relatives. We have added to the record a communication to this effect from the above Institution.

The applicant's original petition and his amended petition show that he sought and was denied a belated appeal about six months after his conviction. This denial was not assigned as a ground for post-conviction relief, but was apparently mentioned to comply with the requirement that an application under the Post Conviction Procedure Act discloses prior efforts to obtain relief from the conviction. See Md. Rule BK 41 (a) (5). No explanation is offered for applicant's failure to appeal within the prescribed thirty days, and we see no ground for granting leave to appeal in this case to review the denial of his application for a belated appeal. The applicant contends that if a belated appeal were allowed, his conviction should be reversed because it is based upon the uncorroborated testimony of accomplices. Since a post-conviction proceeding is not a substitute for either a motion for a new trial or an appeal, this contention is not properly before us. If it were, we should find no merit in it, for there was corroboration.

On Harrington's first application we noted that even if a State's witness, Stroy, had been improperly released, as Harrington contends, that would furnish Harrington no ground for post-conviction relief.

*Application denied.*