GLENDON E. McCOY *v.* WARDEN, MARYLAND
PENITENTIARY

[No. 30, Initial Term, 1967.]

112

*Decided March 20, 1967.*

Before MORTON, ORTH and THOMPSON, JJ., and DYER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

ORTH, J., delivered the opinion of the Court.

The applicant for leave to appeal was convicted of assault with intent to rape on December 15, 1952, by a jury sitting in the Circuit Court for Montgomery County, Judge Stedman Prescott, presiding, and sentenced to twenty years in the Maryland Penitentiary. A motion for a new trial was denied on January 9, 1953. On April 13, 1966, applicant filed a thirteen page petition for review under the Uniform Post Conviction Procedure Act in which he presents twenty contentions, in substance as follows:

1) He was arrested without a warrant.
2) He was interrogated for twelve to fifteen hours without being advised of his constitutional rights and without benefit of counsel.
3) There was an illegal search and seizure of his clothing.
4) He was subjected to physical and mental abuse during his interrogation, given promises and threatened.
5) He was illegally imprisoned before trial.
6) He was held incommunicado prior to the preliminary hearing despite his wife's repeated efforts to see him.
7) He had no counsel at the preliminary hearing at which he entered a plea of "not guilty".
8) He was not confronted by witnesses at the preliminary hearing.

9) He had no counsel at arraignment.
10) There was no confrontation at arraignment.
11) He was in jail for five months before trial.
12) Counsel was appointed for him too close to trial date for adequate preparation.
13) Statements made by him at the interrogation were used against him at the trial but they "were in no way an admission of guilt nor in any sense a confession but were twisted to suit the State's purposes and were used".
14) There was "false and doctored" evidence introduced to the jury.
15) The State withheld evidence favorable to him.
16) There was false and contradictory testimony of State's witnesses.
17) There was deliberate flaunting of court orders by the prosecution concerning witnesses and lack of effort on the part of the trial judge to enforce this order.
18) There was deliberate intimidation of his counsel by the State and detectives.
19) There were irregularities in the choosing of the jury. All women were omitted.
20) His counsel was incompetent.

With respect to contentions 4, 14, 15, 17, 18, 19 and 20, applicant stated that he reserved the right, until actually in open court, to state the facts with respect thereto despite Rule BK 41 a and b. Contrary to Rule BK 41 c, numerous citations and extensive argument are set forth in support of the petition.

On April 21, 1966, the Court appointed counsel to represent applicant. The record discloses that three witnesses were summoned by the State and six witnesses were summoned by the applicant. The record does not disclose a request by applicant for a transcript of the proceedings at the original trial.

Judge Shure accompanied the order denying relief by a memorandum in which he stated that at the hearing applicant was interrogated by his counsel on each of the twenty contentions.

With regard to the first, third and fifth contentions, the crime of assault with intent to rape is a felony and Judge Shure

found clearly reasonable grounds for the arrest. (Code (1957), Art. 27, Sec. 12). Therefore, the contention of illegal search and seizure is without significance. Further, nothing obtained by the search and seizure was offered in evidence against him.

With regard to the second, fourth and ninth contentions, as to lack of counsel, applicant was convicted in 1952. The Court of Appeals of Maryland held that the rule in *Escobedo v. Illinois,* 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964), would not be applied retroactively. (*Brewster v. Warden,* 243 Md. 688, 221 A. 2d 83 [1966]; *Hyde v. State,* 240 Md. 661, 215 A.2d 145 [1965]; see also *Johnson v. New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882 [1966]). As to the police interrogation, Judge Shure found no credible evidence whatsoever of any improper interrogation, the contentions being categorically denied by the police officers.

With regard to the sixth contention, refusal to allow applicant's wife to see him, standing alone, is no ground for post conviction relief.

With regard to the seventh and eighth contentions, Judge Shure found as a fact that applicant's two counsel were present at the preliminary hearing. Further, a preliminary hearing relates only to the legality of an accused in detention before his indictment and is not a necessary proceeding in obtaining a valid conviction. (*Ferrell v. Warden,* 241 Md. 432, 216 A. 2d 740 [1966]).

With regard to the ninth and tenth contentions, applicant pleaded "not guilty" at his arraignment and absence of counsel and lack of confrontation are not grounds for post conviction relief. (*DeVaughn v. Warden,* 241 Md. 411, 216 A. 2d 748 [1966]).

The eleventh contention is a bald allegation. There is nothing in the record to show that the matter was raised at the original trial, that any effort was made for an earlier trial, or that applicant was in any way prejudiced.

With regard to the twelfth, eighteenth, nineteenth and twentieth contentions, all directed toward alleged incompetency of counsel, Judge Shure found that the lower court appointed two respected members of the bar to represent applicant, one a

leading criminal lawyer at that time, and the other now considered a leading criminal lawyer, and that there was no testimony, nor does anything appear of record at any stage of the proceedings to indicate to any degree a lack of completely adequate representation. An extract from a letter dated February 28, 1953, from applicant to Robert C. Heeney, Esquire, one of applicant's counsel was read into evidence at the post conviction hearing, transcript, page 20,

> " 'If I had received the death penalty it most truthfully would not have been your fault. If I'd had a million dollars that day, on December 15, 1952, I would have given you every cent, because you sure earned it. I say that in all sincerity. You did everything you possibly could at that time. Never once have I ever said anything but compliments about you for your devotion of time and energy preparing for that trial.' "

The thirteenth contention presents no ground for post conviction relief. Applicant states that the statements he made were not any admission of guilt nor in any sense a confession.

Contentions fourteen and sixteen pertain to the evidence, that it was false and contradictory. There is no showing what the false testimony was or that the State knowingly participated in the use of the alleged perjured testimony. (*Meadows v. Warden,* 232 Md. 635, 192 A. 2d 758). Bald assertions unsupported by specific allegation do not constitute a ground for post conviction relief and this court cannot assume a bald unsupported allegation in the petition to be true. (*Hornes v. Warden,* 235 Md. 673, 202 A. 2d 643 [1964]; *Brown v. Warden,* 221 Md. 582, 155 A. 2d 648).

The fifteenth contention is that the State withheld evidence favorable to the applicant. In his petition with regard to this contention, applicant states that "he reserves the right until actually in open court on the hearing * * * to state the facts backing up this allegation." The record indicates it concerned laboratory tests of clothing. The record indicates a pair of shorts of the victim were proffered and that an F.B.I. Agent testified that they contained seminal stains (hearing transcript,

Page 10). So this contention apparently concerns laboratory tests of clothing of the applicant performed by a private laboratory hired by the family of the applicant. Mr. Heeney stated, transcript of hearing, pages 14-15, that the tests were not made until after the applicant had been convicted. Therefore, they could not be evidence suppressed by the State.

There is some indication that another laboratory test was not used at the trial because it found nothing.

It is clear that the suppression or withholding by the State of material evidence exculpatory to an accused is a violation of due process and is ground for relief under the Uniform Post Conviction Procedure Act. Such evidence must be material and capable of clearing or tending to clear the accused of guilt or of substantially affecting the punishment to be imposed in addition to being such as could reasonably be considered admissible and useful to the defense. *State v. Giles*, 239 Md. 458; cert. granted, 383 U. S. 941; *Giles v. State*, 35 U. S. L. Week 4181 (U. S. February 20, 1967).

In *Hyde v. Warden*, 235 Md. 641, there was a contention that clothes taken from the defendant were not introduced into evidence. He had been washing them just before his arrest and no blood stains were found when they were tested.

The Court said, page 645,

"Such evidence does not seem material. In any event, in view of Hyde's knowledge of these articles, this contention is not supportable."

Appellant, of course, had knowledge of the clothing and could have proffered them if he thought them material.

The record does not disclose a suppression of evidence amounting to a denial of due process.

The seventeenth contention is without merit. The bald allegation to the effect that the trial judge assisted the prosecution is insufficient to form any basis for relief. (*Duff v. Warden*, 234 Md. 646, 200 A. 2d 78 [1964]).

With further regard to the nineteenth contention, Judge Shure found no irregularities in the jury selection. Applicant was represented by counsel, there was a full jury panel available, the twenty challenges to which applicant was entitled were

exercised carefully so that an all male jury was selected. Even if this was an error in trial tactics, and it does not so appear to be as the verdict carried a recommendation "without capital punishment," it does not afford a ground for post conviction relief. (*Hall v. Warden,* 224 Md. 662, 168 A. 2d 373).

By order of June 22, 1966, after a hearing before Judge Ralph G. Shure, at which applicant was represented by appointed counsel, the relief was denied.

Applicant filed an application for leave to appeal and as grounds, listed thirteen contentions broken down into thirty-six sub-headings. These are substantially the twenty contentions raised in his petition. He then questions the post conviction decision denying relief, on eight grounds, as follows:

"1) Appellant's attorney requested a continuance which was denied. Appellant's attorney was then subjected to severe reprimands on several occasions, by the Court, for his lack of preparation and knowledge of the case.

2) The Court's introduction of list of "defense" witnesses is at odds with actual trial witnesses who testified, at odds with a Clerk of Court list showing sixteen "defense" witnesses. The Court's list shows seven. The Clerk of Court's sixteen, when in reality there were only two. Appellant and his wife.

3) The Court's disregarding testimony by Detective Leahe and Whalen that they 'did not' remind me of any rights to remain silent, nor allow me to call an attorney or wife.

4) The Court's disregarding the conflict in the testimony of Mr. Robert Heeney, original trial counselor, and the then State's Attorney, Mr. Dawson, concerning evidence introduced at trial.

5) The Court's constant refusal (since 1953) to give appellant his original trial transcript simply because he is unable to "pay" for it.

6) The Court's complete acceptance as truth, the statements of everyone but appellant's.

7) The Court's ignoring of testimony by original trial attorney, Mr. Robert Heeney, that he failed to appeal

appellant's conviction simply because appellant was unable to "pay" for it.

8) The Court's apparent willingness to punish appellant for the crime of being too poor to matter and therefore subject to the whims of the Court."

The first is apparently directed to competence of counsel at the post conviction hearing. The record does not support this contention and it is insufficient to constitute a ground for relief. (*Harrington v. Warden,* 232 Md. 621, 192 A. 2d 778; *Kiah v. Warden,* 232 Md. 653.)

The second, alleging a discrepancy between defense witnesses listed and those who testified, is a matter of trial tactics and no ground to grant leave to appeal. (*Hall v. Warden,* supra.) Judge Shure found that those who were summoned and not called were character witnesses and counsel "very wisely did not put them on the stand" in view of applicant's criminal record.

The third, fourth and sixth grounds allege that the court in the hearing for post conviction relief, disregarded certain testimony and accepted other testimony. These matters go to the credibility of witnesses and the weight of the testimony, and are not sufficient grounds for reversing the order of the hearing Judge.

The fifth ground states that the court refused to give applicant a copy of the transcript of his original trial "simply because he is unable to 'pay' for it." Judge Shure found that the reporter at the original trial is deceased and his records destroyed. Applicant has not shown why a transcript is necessary for his use and he has no absolute right to it. (*Bauerlien v. Warden,* 236 Md. 346.)

The eighth ground is patently frivolous and affords no ground for relief.

There remains the seventh ground that an appeal was not pursued because applicant was unable to pay for it.

The transcript of the testimony of Mr. Heeney at the hearing, discloses that Harold C. Smith, Esquire, one of applicant's counsel at the original trial, told the trial court, in response to an inquiry as to whether sentencing was to be deferred, that applicant wanted to appeal.

Mr. Heeney testified further, pages 11, 12 and 13 of the transcript,

"I am quite certain that Mr. McCoy was advised as to his rights of appeal because of a certain something I did later.

Q Did you subsequently note an appeal for him?
A Yes; and I can't say I did it. I would have to see the record but I know either Mr. Smith or I or we jointly did it.
Q Was the appeal carried through?
A No.
Q Can you tell the Court why it was not carried through?
A My memory is that we had—I know this to be a fact—we had no money. Mr. Hahn would not type up the transcript unless he were paid. I think that's the way it stopped.
Q Mr. McCoy did request an appeal and did request you to make an appeal for him; did he not?
A Well, I can't say he requested us to make an appeal for him but I think we did it. I'm doing a little bit of a dance here, a mental dance, because we were appointed for the trial. We were not appointed to represent him on an appeal; nobody ever appointed us for that. So that's about the best way I can answer your question.
Q To the best of your knowledge then, your recollection, the reason an appeal was not carried forth was because you did not have the money from Mr. McCoy?
A I remember discussing with Mr. Smith how can we get this appeal through, and Mr. Smith of course was a very experienced member of the bar. He told me that, well, there's no money, you just can't.

As I remember there was no provision at that time for the State paying for a transcript or paying for the cost of an appeal."

Mr. Heeney did not remember whether or not there were, in the opinion of counsel, any grounds for appeal. He said, page 19,

"You know you have to read the record to decide whether there is an appeal or not. But nothing sticks out in my mind or my notes."

The docket entries of the original trial show that applicant was found guilty on December 15, 1952, that he was sentenced on December 16, 1952, that on December 17, 1952, he filed a motion for a new trial, that the motion was heard before Judge Stedman Prescott and "overruled" on January 9, 1953, that "line for Appeal to Court of Appeals filed" on January 19, 1953.

The rules of the Court of Appeals in effect in 1952 and 1953, required that the appeal be taken within 10 days from the judgment or sentence except when the death sentence was imposed in which case appeal had to be taken within 30 days. Rules of Court of Appeals, Appeals in Criminal Cases, 24, sec. 1. Since applicant was sentenced on December 16, 1952, the appeal noted on January 19, 1953, was not within the required 10 days. It was within 10 days from the date the motion for a new trial was denied. The question at this point is, therefore, whether the motion filed extended the time for appeal. The Court of Appeals said in *Colter v. State*, 219 Md. 190, 191-192:

"It is quite clear that an appeal will not lie from an order denying a new trial, at least where it is not claimed that there was an abuse of discretion. *Williams v. State*, 204 Md. 55, 66, and cases cited; Cf. *Clay v. State*, 211 Md. 577, 587. It also seems clear that the timely filing of the motion for a new trial, after judgment and sentence, did not extend the time for filing an appeal. *Hayes v. State*, 141 Md. 280, 282."

Although *Colter* was decided within the framework of Rule 812 a of the Maryland Rules, the most radical change at the adoption of this rule was to lengthen the time for appeal in criminal cases (other than cases where the death penalty was imposed). We see no reason why the principle announced in

*Colter* was not equally applicable under the prior rule. The instant case is to be distinguished from *Brown v. State,* 237 Md. 492, as *Brown* was distinguished from *Colter.* In *Brown,* there was a question whether the execution of the sentence had been stayed under a rule of the Supreme Bench of Baltimore City. The Court found that it had been and thus there was no final judgment from which an appeal would lie. There was no such question involved in *Colter* nor is there in the instant case. We find that the appeal in the instant case was not timely filed.

The next question is whether, under the facts of the instant case, applicant is entitled to a belated appeal. There is indication from the record before us that applicant was indigent at the time of his original trial. Counsel were appointed to represent him, one of whom testified at the hearing on this matter to the effect that the reporter would not type the transcript unless he were paid and there was "no money." We shall assume, arguendo, that applicant was impecunious. In *Griffin v. Illinois,* 351 U.S. 12 (1956), the Supreme Court held that an indigent defendant who takes a timely appeal but is unable to perfect it because of his poverty, is denied a right guaranteed by the Fourteenth Amendment of the Federal Constitution. Chapter 68 of the Acts of 1958, effective June 1, 1958, added a new section 15 A to Article 5 of the Code (1957), providing that an accused may file with the court imposing sentence a petition under oath alleging the fact of his poverty and that the trial court, upon being satisfied that such defendant is unable by reason of poverty to defray the expense of prosecuting an appeal, shall sign an order directing that such costs be paid by the State. This procedure, of course, was not in effect at the time of applicant's judgment and sentence.

In the cases in which the Court of Appeals considered the right to belated appeal in criminal cases, certain rules of law became apparent within the framework of *Griffin v. Illinois,* supra. To be entitled to a belated appeal, a *timely* direct appeal must be attempted but thwarted by State officials. *Sewell v. Warden,* 235 Md. 615; *Lloyd v. Warden,* 217 Md. 667. But see *State v. Shoemaker,* 225 Md. 639. Erroneous advice given by counsel or any misunderstanding between defendant and his trial counsel with regard to his taking an appeal are not in

themselves sufficient. *Strosnider v. Warden*, 216 Md. 635; *Lipscomb v. Warden*, 223 Md. 640. Indigency as the reason for failure to take an appeal with no showing of an effort to appeal within the time allowed is not sufficient. *Brown v. Warden*, 221 Md. 582.

In the instant case, there is indication that applicant wanted to appeal at the time of his conviction. However, instead, a motion for a new trial was made the day after his sentence and an appeal (which we have determined to be not timely filed) was not noted until ten days after the motion was denied.

But if we assume, without deciding, as the Court of Appeals did in *State v. Brown*, 235 Md. 401, 407, that applicant "* * * might be entitled to a belated appeal under some circumstances, as a remedy to insure that he could obtain as full a review as if he had entered an appeal * * *" we find no error in this record, as the Court found none in *Brown*, to justify the remedy sought, since we have determined that none of the contentions nor grounds herein presented, that could have been raised on direct appeal, has any merit.

Applicant concluded his application for leave to appeal by stating that he "relys completely on *Escobedo v. Illinois* * * * for the success of his petition * * *." As we have pointed out, as *Escobedo* is not to be applied retroactively, it affords no basis for relief. *Brewster v. Warden*, supra.

It is interesting to note that Judge Shure received the impression from the hearing that the crux of applicant's complaint was shown by his suggestion that he should have been charged with carnal knowledge and not rape. Judge Shure correctly points out that applicant was indicted and convicted for assault with intent to rape, that the sentence was within the statutory limits and not cruel and unusual.

*Application denied.*