JOHN W. CHESLEY *v.* STATE OF MARYLAND

[No. 157, September Term, 1967.]

*Decided April 9, 1968.*

The cause was submitted to MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Harvey Lee Cohen* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Barrett Freedlander, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty in a trial by the court in the Criminal Court of Baltimore of the rape and robbery of Molly

Manigold.[1] He was sentenced to imprisonment for the balance of his natural life on the rape conviction and to a term of 10 years on the robbery conviction to run concurrently with the life sentence.

On appeal the appellant contends:

I The lower court erred in denying his motion to dismiss the indictments.

II The evidence was not sufficient to sustain the convictions.

III He was denied due process of law by suppression of evidence by the State.

## I

The appellant filed a motion to dismiss the indictments on the grounds that he was not afforded the benefit of counsel "when he was presented for indictment before the Grand Jury" and was "denied his constitutional right to confront and cross-examine witnesses against him which Grand Jury heard". The motion was denied.

In *Watson v. Warden,* 2 Md. App. 134 we held that there was no denial of rights guaranteed by the 6th and 14th Amendments to the Constitution of the United States by the exclusion of an accused and his attorney from the proceedings of the grand jury leading to indictment. We cited *Coblentz v. State,* 164 Md. 558, where the Court said, pages 566-567:

> "The grand jury is an accusing body, and not a judicial tribunal; and it acts upon knowledge possessed by its members from any source, whether from witnesses brought before it, or from information gained before its sessions. 'In this state they have plenary in-

---

1. The appellant filed pleas of not guilty and not guilty by reason of insanity at the time of the commission of the offense and at the time of the trial. By order of the lower court he was examined and evaluated at Clifton T. Perkins State Hospital and a report was submitted by the superintendent of that institution. The issue of sanity was determined preliminarily by the court after hearing testimony of a staff psychiatrist of Clifton T. Perkins State Hospital. The court found that the appellant was legally sane at the time of the commission of the offense and sane at the time of the trial. Those findings are not contested on appeal.

quisitorial powers, and may lawfully themselves, and upon their own motion, originate charges against offenders, though no preliminary proceedings have been had before a magistrate, and though neither the court nor the state's attorney has laid the matter before them.' *Blaney v. State,* 74 Md. 153, 21 A. 547, 548; *In re Grand Jury Report,* 152 Md. 616, 137 A. 370. And their oath requires them to present all things truly as they come to their knowledge, according to the best of their understanding. But it is an inflexible requirement that their investigations shall be carried on secretly and free from outside interference or influence; and great care is taken that they shall be so carried on. The purposes of this are many. Freedom of inquiry is to be preserved, and at the same time individuals whose conduct may be investigated, but against whom no indictment may be found, are to be protected from disrepute, and all individuals are to be protected from one-sided presentations of unfavorable evidence, without opportunity to reply, before any one present unnecessarily. See *In re Grand Jury Report,* 152 Md. 616, 631, 137 A. 370. This protection from one-sided hearings has, indeed, been regarded as demanded in constitutional provisions for inauguration of criminal proceedings by indictment. *Comm. v. Harris,* 231 Mass. 584, 121 N. E. 409. It is, moreover, "inherent in the grand jury system with all the force of a statutory enactment.' *United States v. Edgerton* (D. C.), 80 Fed. 374, 375. And it is found embodied in the familiar grand jury oath that the members sworn shall keep secret the counsel of the state, their fellows, and their own, and shall not present any one for envy, hatred, or malice, nor leave any one unpresented for fear, favor, or affection, or hope of reward. The rule is not merely a remedial one, that injury shown to have been sustained by the accused in a particular case shall be remedied, but also a preventive one, which interposes in advance for private benefit and public benefit as well. Discriminations between degrees of depar-

ture from it are difficult to manage, and, unless the bar is maintained in all cases, it can hardly have any effective existence. Therefore the law must act upon the existence of opportunity rather than await proof of abuse, as in cases of communications with petit jurors, and also in civil cases of conflicts of interests of agents, attorney, or trustees. *Mason v. Martin,* 4 Md. 124; *Gaither v. Myrick,* 9 Md. 118, 143; *Derlin v. Derlin,* 142 Md. 352, 121 A. 27. 'Their findings must be their own, uninfluenced by the promptings or suggestions of others, or the opportunity thereof.' *Lewis v. Board of Commrs. of Wake County,* 74 N. C. 194."

We said in *Watson* at page 140:

"No Attorney, other than the State's Attorney, his assistants, or someone appointed in their stead is permitted to attend the proceedings before the grand jury. *Coblentz v. State, supra,* at page 564. The appearance of any person before the grand jury attempting to influence the jury is not permissible. *Brack v. Wells,* 184 Md. 86, 95. It has been held that one who is being investigated by the grand jury has no right, constitutional or otherwise, to appear before that body. *Duke v. United States,* 90 F. 2d 840 (4th Cir. 1937) cert. denied 302 U. S. 685, rehearing denied 302 U. S. 775, (cited as authority in *Brack v. Wells, supra*) ; *United States v. Thompson,* 144 F. 2d 604 (2nd Cir. 1944) opinions by L. Hand; J. cert. denied 323 U. S. 790. In *Hitzelberger v. State,* 173 Md. 435 it was held that one under investigation who attempts to influence a member of a grand jury to present certain evidence in favor of that person may be held in contempt. It has also been held that one who merely solicits the grand jury to allow him to testify in his own defense may be held in contempt. *Commonwealth v. McNary,* 246 Mass. 46, 140 N. E. 255, 256 (cited with approval of *Hitzelberger v. State, supra.*)"

We are not persuaded by the authorities relied on by the appellant to depart from our holding in *Watson* that neither the ac-

cused nor counsel representing him have any right to be present during the proceedings before the grand jury.[2] Because of the nature of the functions of the grand jury, the cases cited by the appellant in support of his contention are not in point and are not apposite by analogy. They conclude that assistance of counsel may, under certain circumstances, be necessary to assure certain rights of an accused, at a preliminary hearing or arraignment,[3] at a lineup,[4] at the obtaining of a confession,[5] and at the trial.[6] Nor do we construe *Pointer v. Texas*, 380 U. S. 400, where the Court held that the right of the accused to confront the witnesses against him was denied where a transcript of testimony at a preliminary hearing, at which there was no opportunity for cross-examination, was admitted in evidence at the trial on the merits, to compel such confrontation of witnesses in grand jury proceedings.

The appellant also alleges that, because prior to conviction, an accused who is charged with an offense, the maximum punishment for which is capital, is not entitled to bail "as a matter of law" (Md. Rules, 777 a), the action of the grand jury in indicting him deprived him of his liberty without due process of law. But the rule continues: "In a capital case the accused may be admitted to bail in the discretion of the court." We see no merit in this allegation. The question presented by a denial of

---

2. In accord, see *Allred v. State*, 187 So. 2d 28 (Miss. 1966); *U. S. ex rel. Wheeler v. Flood*, 269 F. Supp. 194 (E. D. N. Y. 1967); *United States v. Elksnis*, 259 F. Supp. 236 (S. D. N. Y. 1966); *United States v. Rosen*, 259 F. Supp. 942 (S. D. N. Y. 1966); *People v. Dupree*, 319 P. 2d 39 (Cal. App. 1957). See also 38 *C.J.S.* §39, p. 1038. In the State of New York, by statute, one under investigation is permitted to be present under some circumstances. See *People v. Lazar*, 272 N. Y. S. 2d 898 (1966). In Connecticut the practice is to allow one being investigated to be present, but he is not permitted to be accompanied by counsel. *State v. Stallings*, 224 A. 2d 718 (Conn. 1966); *State v. Guay*, 196 A. 2d 599 (Superior Court of Conn., Hartford City 1963).

3. *Hamilton v. Alabama*, 368 U. S. 52; *White v. Maryland*, 373 U. S. 59; *Powell v. Alabama*, 287 U. S. 45.

4. *United States v. Wade*, 388 U. S. 218.

5. *Escobedo v. Illinois*, 378 U. S. 478; *Miranda v. Arizona*, 384 U. S. 436; *Massiah v. United States*, 377 U. S. 201.

6. *Gideon v. Wainwright*, 372 U. S. 335.

bail in such case is one of the exercise of the discretionary power of the court and there is no allegation here that the discretion was abused. See *Fisher v. Ball,* 212 Md. 517.

We find no error in the denial to dismiss the indictments.[7]

## II

Molly Manigold testified that about 11:00 P.M. on the evening of September 23, 1966 while she was walking from her brother's house at 1010 Mosher Street to the house of another brother at 1207 Winchester Street, "somebody grabbed me around my neck * * * and pulled me backwards and twisted my neck and told me if I holler, say 'I kill you.' " She was able to see her assailant — "I'll never forget him"—and identified him as the appellant. She asked him why he was doing this to her, and he said, "Shut up bitch," and hit her in her face with his fist. He dragged her down the alley and threw her down, "beating my face from side to side." He "straightened" her with his leg across her and had intercourse, tearing her clothes "off her." He said, "it's women like you I like to hurt." She was "halfway out and he did what he wanted to do * * * He put his penis in me." He asked her if she had any money and when she replied that she did he took "about a dollar and something" from her pocket while he was still "sitting on top" of her. He told her he was going to kill her and "he started beating me in my face again and I could feel my face swelling up all over." He finally permitted her to get up but had her arm twisted around her back. He pushed her in this manner to her brother's house and she "fell in the door," and hollered for help. She

---

7. We are aware that in *Dennis v. United States,* 86 S. Ct. 1840, the Court held that the petitioners were entitled under the circumstances of that case, to examine the grand jury minutes relating to trial testimony of four government witnesses, and to do so while those witnesses were available for cross-examination. But in so holding it recognized the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts" and "when disclosure is permitted, it is to be done 'discretely and limitedly,' " stating that "upon a showing of 'particularized need' defense counsel might have access to relevant portions of the grand jury testimony of a trial witness," at pages 1848-1849. We think it clear that *Dennis* does not go so far as to compel the appearance of an accused and his counsel before the grand jury.

was then "in shock" and "all I know is waking up down at
University Hospital, the doctors talking to me." The victim's
brother, Charles Mason, testified that he was sitting in his house
when the "outside door, slung open" and his sister hollered,
"Help." He ran out the door and saw the appellant running
"eastward on Winchester towards the alley." Mason ran after
the appellant and caught him near the entrance to the alley. The
appellant put his hand "into his sweater" and Mason hit him,
"knocked him between the white fence and the brick wall." He
brought him back to the house and held him until the police,
whom neighbors had called, arrived. The police officer who re-
sponded to the call testified that when he arrived on the scene
Mason was holding the appellant. Molly Manigold came out of
the house and pointed to the appellant saying, "That's the man
that beat me up and raped me." She showed the officer where
the assault occurred and the police found her shoe about "a
quarter way down the alley" and her black wig about "three
quarters of the way down the alley." He also found some of her
underclothing—part of a slip and part of a pair of panties—in
the area of the attack. The items were admitted in evidence. A
police physician testified that he had examined Molly Manigold
at 1:40 A.M. on September 24, 1966. His examination "showed
both eyes blackened, with a huge hematoma beneath the left eye
with splitting of the surface skin. Eyes were divergent, point-
ing out in both directions. Pupils were small and equal. Three
vertical splits beneath the upper lip, the longest three-quarters
of an inch, the other two a half inch. The lower lip was bruised
and swollen. Blood was caked at the right nostril. On her legs
there was an abrasion of the right knee, multiple abrasions of
both feet, heels, inner and outer surfaces. Her eyes were not
tracking together. They did not go from side to side together.
Seemed to wander off. An X-ray of the head was recommended
to the family. The body also showed that she had had a bowel
movement. There was feces over the buttocks and thighs. The
external genitalia was normal, female. The hymen showed an
old, complete destruction. Bacterial exudate was negative. The
outlet was paros—that means she has had children—relaxed. No
tears, abrasions or cuts. The vagina, a small amount of mucoid
material. The cervix was normal in appearance. Discharge was

negative. A slide which I made was positive for non-motile spermatozoa.[8] Diagnosis was multiple facial injuries, multiple abrasions of extremities, evidence of penetration and ejaculation." The only witness called by the defense was the appellant's mother who testified that the appellant had a hernia operation in 1966 and had complained that he seemed to be "losing his nature," both before and after the operation.

We have no difficulty in determining that the court below had sufficient evidence from which it could fairly be convinced beyond a reasonable doubt of the appellant's guilt both as to the rape and the robbery as charged. *Scott v. State,* 2 Md. App. 709; *Lucas v. State,* 2 Md. App. 590; *McEntire v. State,* 2 Md. App. 449; *McFadden v. State,* 1 Md. App. 511. The appellant complains that the testimony of Molly Manigold was so inconsistent that it should not have been accepted by the trial court. *Kucharczyk v. State,* 235 Md. 334, held that where the sole witness' testimony was so contradictory as to have no probative force, the trier of facts could not speculate about it and select one or another contradictory statements as the basis of the verdict. That principle has no application here. At most Molly Manigold's testimony was contradictory only in minor details, going only to its weight, and her testimony was corroborated in substantial part by other evidence. There was no need for the trial court to speculate in arriving at its verdicts. *Bell v. State,* 2 Md. App. 471, 472. The weight of the evidence and the credibility of the witnesses was for the trial judge to determine. *Dunlap v. State,* 1 Md. App. 444; *Sadler v. State,* 1 Md. App. 383. The judgments of the lower court on the evidence were not clearly erroneous and we shall not set them aside. Md. Rules, 1086; *Hutchinson v. State,* 1 Md. App. 362.

### III

The appellant alleges that after the trial he learned that his pants had been examined at the crime laboratory of the Baltimore City Police Department and that the examination showed

---

8. The physician explained that "non-motile spermatozoa means spermatozoa still maintains its normal shape but it is dead. This would indicate it has been over two hours, but less than eight hours since the time spermatozoa was deposited in the vagina."

they "were negative for sperm." He claims that the report of the examination was "known to the State at the time of his trial." He contends that this was a suppression of evidence by the State and denied him due process of law. The record before us is silent as to an examination of the pants. It does not show if, in fact, such an examination was made, or, assuming it was made, what it disclosed or whether the appellant had knowledge of it prior to trial or could reasonably have learned of it. The contention is not available to the appellant on direct appeal, as on the state of the record there is nothing for this court to review. Not being tried and decided by the lower court, the point is not properly before us. Md. Rules, 1085.[9]

*Judgments affirmed.*

---

9. *Giles v. Maryland,* 87 S. Ct. 793, and *Brady v. Maryland,* 83 S. Ct. 1194, relied on by the appellant, are not contrary to our holding that under the circumstances here present, the matter cannot be determined on direct appeal. However, for a discussion of the rules of law pertaining to suppression of evidence, when properly raised, see, in addition to *Giles* and *Brady, supra, Tucker v. Warden,* 243 Md. 331; *Farrow v. Warden,* 241 Md. 724; *Johns v. Warden,* 240 Md. 209; *State v. Tull,* 240 Md. 49; *Hyde v. Warden,* 235 Md. 641; *Dyson v. Warden,* 233 Md. 630; *McCoy v. Warden,* 1 Md. App. 108; *Ross v. Warden,* 1 Md. App. 46.