Umbert M. PISANI, Jr.

v.

WARDEN, MARYLAND PENITENTIARY.

Civ. No. 18519.

United States District Court
D. Maryland.

Sept. 16, 1968.

Weldon Leroy Maddox, Baltimore, Md., for petitioner.

Francis B. Burch, Atty. Gen. of Maryland, and Alfred J. O'Ferrall, III, Asst. Atty. Gen., Baltimore, Md., for respondent.

HARVEY, District Judge:

On November 18, 1952, Umbert M. Pisani, Jr., petitioner, was charged in separate indictments handed down in the Criminal Court of Baltimore City with various offenses involving his minor daughter, including incest, perverted practice and statutory rape. Represented by court-appointed counsel, petitioner entered a plea of guilty to the incest charge. The rape and perverted practice charges were tried on December 4, 1952 before Judge E. Paul Mason, sitting without a jury. Following his conviction on both charges, petitioner filed a motion for a new trial which was

granted by the Supreme Bench of Baltimore City on February 2, 1953.

Petitioner was tried again on February 17, 1953 before Judge James K. Cullen, also sitting without a jury. After finding petitioner guilty under the two indictments that were tried, Judge Cullen sentenced petitioner on all three charges, imposing consecutive sentences of 10 years on the incest charge, 10 years on the perverted practice charge and 21 years on the rape charge. No appeal was noted by petitioner from these convictions and sentences, but he did file a motion for a reduction of sentence which was denied by Judge Cullen on June 5, 1953. In 1960, petitioner was released from confinement on parole. However, in June of 1963 his parole was revoked, and he was returned to prison for violating the terms and conditions of his parole.

On February 2, 1966, petitioner filed in the Criminal Court of Baltimore City an application for relief under the Maryland Post Conviction Procedure Act. Two hearings were held before Judge Dulaney Foster on March 16 and April 7, 1966, and petitioner as well as his trial counsel testified at such hearings. Judge Foster entered an order dated June 30, 1966 denying relief. An application for leave to appeal from such order was denied by the Court of Special Appeals of Maryland in a *per curiam* opinion dated June 21, 1967. Pisani v. Warden, No. 70, Initial Term, 1967.

Petitioner now seeks habeas corpus relief in this Court, relying on the same points presented to the state courts in his post-conviction petition. He claims (1) that the evidence to support his conviction of statutory rape was insufficient; (2) that he was indicted by an illegally constituted grand jury; (3) that because of his indigency he was unconstitutionally denied his right to appeal his original convictions; and (4) that he was not effectively represented by his counsel. Pursuant to a show cause order, the Attorney General of Maryland has filed an answer to the pending petition, attaching copies of the transcript of the original trial before Judge Mason in 1952, of the transcript of the post-conviction hearing held before Judge Foster, of Judge Foster's opinion denying petitioner post-conviction relief, and of the *per curiam* opinion of the Court of Special Appeals of Maryland denying petitioner's application for leave to appeal from Judge Foster's order. The transcript of the second trial before Judge Cullen is not available in that the court reporter died before the transcript was prepared and the record of such trial cannot be adequately reconstructed.

A hearing has been held before this Court at which petitioner was represented by Weldon L. Maddox, Esq., the same attorney who represented petitioner at the original trial and at the retrial. No further testimony was adduced at such hearing, counsel having agreed that a decision should be rendered in this case on the basis of the available transcripts of the prior proceedings and the pleadings, briefs and oral arguments in this Court. At the hearing, counsel for petitioner formally withdrew points (2) and (4).[1]

As his first point, petitioner claims that the evidence before the trial court at his second trial was insufficient to support the charge of statutory rape. The sufficiency of the evidence in a state trial is a matter of state law and procedure not involving a federal constitu-

---

[1]. In any event, petitioner's second point is without merit as it has been clearly established that Schowgurow v. State of Maryland, 240 Md. 121, 213 A.2d 475 (1965), is not to be given retroactive application. Smith v. Brough, 248 F.Supp. 435 (D.Md. 1965), affirmed 362 F.2d 763 (4th Cir. 1966); DeToro v. Warden, Maryland Penitentiary, 264 F.Supp. 528 (D.Md.1967). As to his fourth point, the record indicates that petitioner was given competent advice by his attorney in February of 1953 to the effect that the State of Maryland would not pay the costs of his appeal even though petitioner was indigent. Zimmerman v. State, 191 Md. 7, 59 A.2d 675 (1948). This is not then a case where a defendant did not take an appeal because of his attorney's inaction or improper advice.

tional issue, and it is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960); Harrison v. Boles, 307 F.2d 928 (4th Cir. 1962). As stated in Young v. Boles, 343 F.2d 136, 138 (4th Cir. 1965), the sole inquiry in a habeas corpus proceeding is whether the conviction "rests upon any evidence at all." A review of relevant portions of the transcript of the 1952 trial, which formed the basis for the second trial in 1953, discloses ample legally admissible evidence to support petitioner's rape conviction.[2]

Petitioner's daughter, Patricia Pisani, who was nineteen years old at the time of the first trial, testified that from the time that she was about eleven years old until she was seventeen and left home because of the continuing abuse, petitioner forced here to have intercourse with him approximately once a week. She further testified that both before and after she was eleven, her father forced her to commit perverted acts with him.

■ The daughter's testimony was corroborated in part by that of petitioner's wife who testified that on one occasion in 1946 she caught her husband having intercourse with her daughter. Mrs. Pisani further testified that when her daughter decided to leave home on December 16, 1950, she had called her mother and said "she was leaving home and I would know the reason why." Besides Mrs. Pisani, three friends of Patricia Pisani testified that on December 16, 1950 Patricia had told them of her father's sexual attack on her that very day and that she had previously told them of similar attacks. Without considering the testimony of three police officers and of petitioner himself as to the voluntariness of the written confession of petitioner that was introduced in evidence at the first trial,[3] it is clear from the other testimony that the statutory rape conviction is not so devoid of evidentiary support as to infringe any constitutional right of petitioner. In particular, the evidence shows that Patricia was 14 years of age or less at the time of some of these acts as required by the Maryland statute defining statutory rape.[4] See Article 27, § 462, Md. Ann.Code (1967 Repl.Vol.)

The other attack on his convictions pressed by petitioner in this Court raises more substantial questions. Relying on Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891

2. At the second trial it was agreed by counsel that the case would be presented to and tried by Judge Cullen on the written transcript of the first trial with certain matters being deleted from such transcript and with counsel for defendant having the right to make various motions as to the evidence. Although it is not now possible to determine what deletions were made in such transcript, counsel for petitioner in this Court has stated that if a belated appeal were granted, petitioner's attack would be directed against the admissibility of his confession at the second trial, and he raises no point as to the admissibility of the testimony of petitioner's daughter, his wife and his daughter's three friends. This testimony has therefore been considered as legally admissible evidence for the purpose of determining whether there is evidence supporting the conviction.

3. The three police officers testified that petitioner's confession was not induced by any treats, promises or pressure. Petitioner testified that such confession was involuntary and was prompted by fear that he would be sent to a mental institution. In the absence of a transcript of the second trial, this Court cannot determine whether Judge Cullen excluded the confession or whether he ruled that it was voluntary and considered it along with the other evidence.

4. The indictment charging petitioner with statutory rape alleged that the offense occurred on a date before Patricia was 15. Under Maryland law, it is clear that the State is not confined in its proof to the specific date alleged in the indictment. Chisley v. State, 236 Md. 607, 203 A.2d 266 (1964); Fulton v. State, 223 Md. 531, 532, 165 A.2d 774 (1960); see also Tincher v. Boles, 364 F.2d 497 (4th Cir. 1966).

(1956), petitioner contends that he is entitled to his release because he was denied his right of appeal solely because of his indigency. In *Griffin* the petitioner had been convicted of armed robbery and immediately after his trial had moved that a transcript of the testimony be furnished to him without cost so that he could pursue an appeal. At that time in Illinois, only indigent defendants who had been sentenced to death were entitled to free transcripts at State expense. As a result of the denial of his request for a free transcript, he was unable to secure appellate review of his conviction. The Supreme Court held that on such facts it was a violation of the Fourteenth Amendment to deprive a person because of his indigency of any rights of appeal afforded all other convicted defendants. In Eskridge v. Washington State Board, etc., 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958), this rule, first enunciated in 1956, was held to be retroactive.

The facts here indicate that following the convictions and sentences of February 17, 1953, petitioner was advised by Mr. Maddox, his attorney, that money would have to be raised to take an appeal from the judgments and sentences of the lower court. Mr. Maddox further told petitioner that he would represent him on appeal without fee but that it would be necessary to have money to defray other appeal costs. Petitioner was advised that the law of Maryland at that time did not provide for the furnishing of a transcript at State expense except in capital cases. Pursuant to instructions from petitioner, Mr. Maddox contacted petitioner's wife and other named individuals in an effort to raise money for the appeal. When no cash could be raised within the time required by Maryland law for filing a notice of appeal, the appeal was abandoned. Under these circumstances, this Court finds that in 1953 petitioner did not prosecute an appeal because he could not afford to pay for one.

■ The Court of Appeals of Maryland has recognized the right of a defendant to a belated appeal where a timely appeal has been taken but not perfected because of his indigency. Lloyd v. Warden of Maryland Penitentiary, 217 Md. 667, 143 A.2d 483 (1958). Relying on McCoy v. Warden, Maryland Penitentiary, 1 Md.App. 108, 227 A.2d 375 (1967), the State here argues that no belated appeal is warranted in this case because to be entitled to one a defendant must attempt a timely direct appeal but be thwarted by state officials.[5] In its *per curiam* opinion denying this petitioner's application for leave to appeal, the Court of Special Appeals likewise relied upon *McCoy* in holding that the petitioner here was not entitled to a belated appeal because no action taken by state officials had prevented the appeal. Pisani v. State, supra.

The precise question presented here has never been ruled upon by the Court of Appeals of Maryland. It is doubtful in view of State v. Shoemaker, 225 Md. 639, 171 A.2d 468 (1961), that the Court of Appeals would hold that under the facts here present a timely direct appeal must first have been attempted by an indigent defendant and then thwarted by state officials before such defendant would be entitled to a belated appeal. In *Shoemaker,* the facts indicated that an indigent defendant did intend to appeal but that only the lack of funds had prevented the perfection and hearing of the appeal. Following a post-conviction hearing, the lower court ordered that the prisoner be given a delayed appeal. In

---

**5.** After being denied relief in the state courts, McCoy filed a habeas corpus petition in this Court. In an unpublished Memorandum and Order, Judge Northrop disagreed with the Court of Special Appeals and, relying on *Griffin*, found that (under circumstances slightly different from those here present) McCoy's constitutional rights had in fact been violated, even though the record showed no evidence of action taken by state officials. McCoy v. State, Civil No. 18022, D.Md., November 9, 1967.

affirming, Judge Hammond said the following at page 642, 171 A.2d at page 470:

"We think the findings of fact by Judge Digges leave no basis for the sustaining of the State's position. The prisoner was not apprised that his original lawyer was no longer in the case or that he had a new lawyer and, apparently with justification, believed that the appeal which he had requested was being perfected. *Although the State had no part in preventing his appeal,* we think that under the cirstances Judge Digges did not err in ordering that the case be forwarded to this Court for review. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington State Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269; Lloyd v. Warden [of Maryland Penitentiary], 217 Md. 667, 143 A.2d 483; cf. Brown v. Warden [of Maryland Penitentiary], 221 Md. 582, 155 A.2d 648." (Emphasis added)

In Williams v. Coiner, 392 F.2d 210 (4th Cir. 1968), it was alleged by a petitioner serving a life sentence that his indigence deprived him of his right to appeal from armed robbery and recidivist convictions in 1936. The petitioner claimed that his retained lawyers did not file an appeal because he had no more money. In remanding the case so that the District Court might determine the validity of the petitioner's assertions, the Court said the following at page 213:

"If upon investigation it is found that Williams desired and sought an appeal, that he was refused by his lawyers because of his indigence and that he was not advised of his right to have the state provide counsel and the requisite transcript, then the District Court should order petitioner's release unless the state's appellate courts will grant a delayed appeal. Puckett v. State of North Carolina, 343 F.2d 452 (4th Cir. 1965); Newsom v. Peyton, 341 F.2d 904 (4th Cir. 1965)."

▮ In the light of the *Shoemaker* and *Coiner* decisions, this Court rejects the State's argument that the petitioner here is entitled to no relief under *Griffin* because he did not take the formal step of sending to state officials a written notice of appeal which they were required by law to reject. The circumstances here disclose that petitioner's attorney, after recommending an appeal, correctly advised petitioner following his conviction in 1953 that Maryland law did not then provide for the payment of appeal costs by the State for an indigent. The record shows that petitioner in fact intended to take an appeal, that he made a good faith effort to raise funds therefor, but that such appeal was not timely filed solely because of his indigency. On this record, it is concluded that because of petitioner's indigency and the requirements of Maryland law in 1953, petitioner was denied his right to an appeal. Were it not for another aspect of this case, this Court would order petitioner's release unless the appellate courts of Maryland would grant him a belated appeal. However, the facts here indicate that through no fault of the State a belated appeal is not possible in this case because the court reporter at petitioner's retrial is now deceased and there is no way that the record at such second trial can be reconstructed.

The State vigorously urges that the facts here raise the precise question which was presented to the Supreme Court in Norvell v. State of Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963). In that case, the petitioner had been convicted of murder in the Illinois courts in 1941 and had been sentenced to 199 years in prison. Though indigent, he had a lawyer at his trial. A proper motion to institute proceedings for an appeal was filed, "presumably" by his lawyer. However, because he was indigent, he was unable to pay the costs of his trial transcript, did not obtain it and did not pursue his appeal. Relying on Griffin v. People of State of Illinois, the petitioner in 1956 sought a new trial in the lower state court because of errors

in the original trial. However, because one of the two official reporters at the original three-day trial had died and no one could read his notes, it was not possible to reconstruct the entire trial transcript. The state courts had denied relief on the basis of a rule of court providing that such a petition should be denied if the transcript of the trial could not be furnished because of the unavailability of the court reporter.

In an opinion by Mr. Justice Douglas, the Supreme Court affirmed the denial by the Illinois state courts of the relief sought by the petitioner. The Court said that the narrow question before it was "whether a State may avoid the obligation of Griffin v. [People of State of] Illinois, where, without fault, no transcript can be made available, the indigent having had a lawyer at the trial and no remedy having been sought at the time." The Court said the following at pages 423–424, 83 S.Ct. at page 1368:

"We do not say that petitioner, having had a lawyer, could be found to have waived his rights on appeal. We only hold that a State, in applying Griffin v. [People of State of] Illinois to situations where no transcript of the trial is available due to the death of the court reporter, may without violation of the Due Process or Equal Protection Clause deny relief to those who, at the time of the trial, had a lawyer and who presumably had his continuing services for purposes of appeal and yet failed to pursue an appeal. Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment. See Douglas v. [People of State of] California, supra [372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811]. * * *

"*When, through no fault of the State, transcripts of criminal trials are no longer available because of the death of the court reporter, some prac-tical accommodation must be made.* We repeat what was said in Metropolis Theatre Co. v. [City of] Chicago, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]:

'The *problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific. * * * What is best is not always discernible; the wisdom of any choice may be disputed or condemned.'*

The 'rough accommodations' made by government do not violate the Equal Protection Clause of the Fourteenth Amendment unless the lines drawn are 'hostile or invidious.' Welch v. Henry, 305 U.S. 134, 144 [59 S.Ct. 121, 124, 83 L.Ed. 87]. We can make no such condemnation here. For, where transcripts are no longer available, Illinois may rest on the presumption that he who had a lawyer at the trial had one who could protect his rights on appeal." (Emphasis added)

In *Norvell*, the Supreme Court was faced with a square conflict between a defendant's constitutional rights and the right of a state not to have the good faith administration of its criminal laws upset without being afforded the opportunity to show that no errors did in fact occur at a criminal trial. On the one hand, Griffin v. People of State of Illinois has clearly established that it is a violation of the Fourteenth Amendment to deprive a defendant of his right to appeal because of his indigency. On the other hand, it would be manifestly unfair to the administration of justice within a state to upset trial proceedings concluded many years before because of the retroactive application of new constitutional doctrine on the unproven assumption that had an appeal been taken at the time of trial, grounds might have existed for a reversal of a prisoner's conviction.[6] In resolving this dilemma

6. In United States ex rel. Mitchell v. Follette, 358 F.2d 922, 929 (2d Cir. 1966), Judge Friendly questioned whether, assuming that Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) like Griffin v. People of State of Illinois applies to convictions that had become final before the Su-

by way of a practical accommodation in favor of the state, the Supreme Court in *Norvell* stressed that it was no fault of the state that a trial transcript was no longer available because of the death of the court reporter.

The facts of the present case closely approximate those in *Norvell*. Like the petitioner in *Norvell*, the petitioner here was indigent but had the services of an attorney to handle his case on appeal. Both here and in *Norvell*, the petitioner was unable to pay the costs of his appeal and consequently did not pursue such appeal. As in *Norvell*, the petitioner here has been denied the right to have his trial proceedings reviewed by belated appeal or otherwise. In this case, of course, the transcript of petitioner's first trial held in December 1952 is available, and it is the reporter at the second trial who is deceased. Without the latter's notes, it cannot be determined what deletions were made in the transcript and what was included in the record at the second trial on the basis of which Judge Cullen convicted petitioner on the two charges which were then tried.

There were obviously errors committed in the course of the first trial inasmuch as the Supreme Bench of Baltimore City granted a new trial on February 2, 1953, and remanded the case for further proceedings.[7] However, the Supreme Bench filed no opinion or order indicating the grounds relied upon in sending the case back for retrial. Mr. Maddox stated in this Court that he has no notes nor means at this late date of recollecting precisely what were the errors in the first trial and what deletions were agreed to in the record. Counsel for the State advises that Judge Cullen himself can find no notes which would assist in determining what in fact was the record before him in February 1953.

Under such circumstances, the record of the second trial cannot be reconstructed as it is not now possible to segregate and delete the errors included in the transcript of the first trial which were eliminated at the time of the second trial. Indeed, petitioner concedes in paragraph 44 of his petition that "a transcript of the entire trial proceedings of February 17, 1953 cannot be adequately reconstructed at this time by means of affidavit, testimony of witnesses and by other means."

■ This Court concludes that Norvell v. State of Illinois, *supra*, is controlling in this case. No belated appeal is possible at this time because, through no fault of the State, an adequate trial transcript is not available. To require the State to grant petitioner a belated appeal or to release him would necessarily result in his release. Petitioner would thereby gain his freedom because of assumed errors at his second trial, an assumption that the State would have no opportunity to contest. Where a transcript is no longer available, the State may rest on the presumption that he who had a lawyer at the trial had one who could adequately protect his rights. Gallegos v. Cox, 358 F.2d 703, 704 (10th Cir. 1966); Guerra v. Rodriguez, 372 F.2d 472, 474 (10th Cir. 1967); Norvell v. State of Illinois, *supra*. Such presumption as to the regularity of trial proceedings is even stronger in the present case than in *Norvell*. Here the convictions under attack occurred at a second trial, at which petitioner was represented by the same attorney as at the first. The judge who tried petitioner at such second trial was a member of the Supreme Bench of Baltimore City which heard the motion for a new trial filed by petitioner's attorney, and such judge was therefore fully aware of the errors

---

preme Court decision, it would necessarily follow that a federal court must vacate a state conviction of many years standing simply to allow a prisoner to take an appeal which was not shown to have merit.

**7.** At the first trial petitioner took the stand to testify concerning the voluntariness of

his confession. Following cross-examination, the trial judge questioned him aggressively and forced admissions from petitioner to the effect that substantially all of the statements in his confession were in fact true. Presumably, such was one of the errors which required the granting of a new trial to petitioner.

that had been made at the first trial. As in *Norvell*, practical considerations require that the State not be penalized under such circumstances.

■ A further word should be said as to the 41-year sentence imposed by the state trial judge in this case. Federal courts have no right to review any sentence of a state court which does not exceed the statutory maximum which may be imposed under the laws of the state. Stevens v. Warden, Maryland Penitentiary, 382 F.2d 429 (4th Cir. 1967). As in the *Stevens* case, the sentence which was imposed here appears excessive, even after taking into consideration the sordid details concerning the offenses which petitioner committed against his teenage daughter. The pending case like *Stevens* probably would not have required the subsequent attention of trial and appellate judges in both state and federal courts had a reasonable sentence been originally imposed. Excessive sentences which cannot be directly reviewed on appeal or on a habeas corpus petition often lead to distortion of the law particularly when a prisoner has already served many years of a long sentence. Appellate Review of Sentences, 32 F.R.D. 249, 271 (1962); United States v. Hoffman, 137 F.2d 416, 422 (2d Cir. 1943); note, Due Process and Legislative Standards on Sentencing, 101 U.Pa.L.Rev. 257, 264 (1952). It should be noted that petitioner has heretofore been released on parole, but his parole was revoked because of the commission of various acts including a charge involving a similar sex offense.[8] This Court has further been advised that petitioner may soon be eligible for parole once again and that he is scheduled to appear before the Parole Board in December, 1968. Even though this Court would not have imposed the lengthy sentence which petitioner is now serving, the ends of justice would not be served if this Court were to attempt to correct the original sentence by disregarding the clear applicability of *Norvell* to the circumstances here present.

For the reasons stated, the petition for a writ of habeas corpus is denied.

---

8. In April of 1963, petitioner was arrested on a charge of placing his hands upon the person of his seven year old granddaughter. Following an informal hearing in chambers before Judge Turnbull in the Circuit Court for Baltimore County, such charge was dismissed because of the disturbed personality of the child involved. This incident led to further investigation of petitioner by the Department of Parole and Probation, and following a hearing on June 4, 1963, his parole was revoked on the grounds that he had violated the conditions of such parole by the consumption of alcoholic beverages and by associating with persons of ill repute.